CIRCUIT COURT.                                          May 23, 1861.
EQUITY.

## KNAPP v. THE CHESTER VALLEY RAILROAD COMPANY.

Under authority of an act of the legislature of Pennsylvania of 24th February, 1852, a mortgage was made for the security of railroad bonds to trustees named by the bondholders. The act provided that a sale *under the mortgage* should pass the road property and franchises. The mortgage stipulated, *inter alia.* 1. That if the company should fail to pay the principal or interest, the trustees might take possession of the road, receive the income and after defraying charges and expenses apply the net avails in payment of principal and interest due. 2. That after the principal should fall due the trustees might, on request of the bondholders, cause the premises to be sold at auction after prescribed notices. The company having defaulted on its interest payments the first stipulation was carried into effect. Afterwards and before the maturity of the bonds, the trustees on behalf of the bondholders sought in this proceeding the aid of a Court of Equity to obtain foreclosure on the mortgage by reason of the failure to pay interest. *Held,*

1. That in the courts of Pennsylvania there could be no foreclosure of this mortgage. The only proceedings in that State on a mortgage and under which a judgment can be obtained that the mortgaged premises be sold, are given by the act of 1705. There can be no proceeding under this act until after the expiration of twelve months from the time when the principal of the bonds fall due.

2. The method of obtaining an earlier proceeding in that State by inserting a provision in the mortgage that upon default of payment of interest the principal should be considered due, not having been resorted to in this case, it is to be inferred that it was opposed to the views of the parties.

3. In the absence of legislative provision, a railroad and its franchises cannot be sold under an execution, or voluntarily sold, or effectually mortgaged.

4. Had the act of 1852 *(supra)* simply authorized the mortgage to be made as a security for the principal and interest of the bonds, the road and its franchises would according to a doctrine peculiar to Pennsylvania have been liable to an execution under a judgment at law upon a coupon for interest in arrear.  But the terms of the act of 1825, limiting the remedy to a "sale under and by virtue of the mortgage" excludes the application of this doctrine in the absence of a proviso on the mortgage to sell in default of interest.

5. On the equity side of the Circuit Court, remedies are not regulated as on its law side, by the practice in the courts of Pennsylvania.  In a proper case it may extinguish an equity of redemption by a foreclosure, and its practice in such a case would, under the 90th of the rules of 1842, be regulated conformably to the practice of the English Chancery at that period.

6. Where, upon a consideration of the whole contract, the circumstances of the road, and the relations of the parties, it appears that the equity of redemption was intended to be guarded against extinction at any period before the principal becomes due, a Court of Equity will not declare it forfeited.

7. It might, where the state of facts justified it, intervene to secure the subject of the security from irretrievable ruin, on the footing of necessity.

BILL IN EQUITY for foreclosure of mortgage.

## STATEMENT OF THE CASE.

The nature of the mortgage and its provisions, with the act of Assembly under which it was created, are fully set out in the opinion of the court.

The bill was filed by the trustees named in the mortgage. After setting forth the insolvency of the corporation defendants, and their want of means and credit, it averred that the mortgage conveyed the mortgaged property to the complainants to secure payment of interest as well as principal at certain specified days and times; and that these having passed without payment thereof, the legal estate of the corporation in the mortgaged property and franchises had been forfeited and vested absolutely in the trustees, and that there remained in the corporation defendants no more than an equity of redemption, as to which the complainants had an immediate right of foreclosure and sale and to have the proceeds of sale applied to the payment of the overdue debts of the company to the trustees, and their cestuis que trust, the bondholders.  And

further that there was no adequate remedy at law to obtain this right, the franchises not being separable from the road which was valueless without them, and they being incapable of sale under any proceeding at law.

The bill prayed for an ascertainment of the amount of interest due; that the court should declare any estate or title of the corporation defendants in the mortgaged premises to be forfeited by reason of the nonperformance of their covenants to pay interest, and that on the payment thereof by the defendants at a day to be named that the mortgaged property and franchises should be sold under the direction of the court at such time and in such manner as to the court should seem meet and for the distribution of the proceeds under direction of the court among the parties entitled under the mortgage.

The answer averred and the proofs established that the condition of the road was not one of hopeless, permanent insolvency; that its earnings, though inadequate, were still considerable, and that there was a reasonable prospect that in time it might surmount its difficulties and be enabled to meet its engagements. It denied the right of the trustees to proceed in the manner claimed in the bill altogether, and averred that under the mortgage no sale of the mortgaged premises could be enforced at their instance until the principal of the bonds became due and unpaid.

No part of the principal was due before May 1st, 1872.

Accompanying the answer was a plea which set forth a decision of the Supreme Court of Pennsylvania in a suit brought by Bradley, one of the bondholders, against the same corporation (defendants) with whom were joined the trustees who are now complainants in this case. It was a suit in equity to compel the trustees to sell under the mortgage by reason of the company's default of payment of interest. This decision and its effect upon the present case are considered by Judge Cadwalader.

*Richard C. McMurtrie* and *St. George T. Campbell*, for the complainants.

*Charles Gilpin*, for the defendants.

## CADWALADER, J.

The legislature of Pennsylvania, by an act of 24th February, 1852, enabled The Chester Valley Railroad Company to raise money for the completion and equipment of their road and works by issuing their bonds in sums of not less than $100 to an amount not exceeding $500,000, with interest at 7 per cent. per annum, payable half yearly, redeemable in the year 1870, and convertible, at the bondholders' option, into a "preferred 8 per cent. stock" of the company; and enabled them to convey their road, property and franchises acquired, or to be acquired, to trustees of their own appointment on mortgage to secure the payment of the bonds, and accruing interest; and enacted that a sale, under the mortgage should pass the road, property and franchises.

The company issued their bonds for the full amount thus authorized with coupons for the interest; and, for the security of the bondholders, executed a mortgage to trustees, in the form of a conveyance of the railroad and all their franchises and property acquired or thereafter acquired, defeasible on payment of the bonds at maturity, and of the interest in the meantime, with a provision that, if the company should fail to pay the principal or interest, the trustees might take possession of the road, receive the income, and after defraying charges and expenses, apply the net avails in payment of the principal and interest due; and another provision of which the effect, as determined by the Supreme Court of the State, was, that, after the principal should fall due, the trustees might, on request of bondholders, cause the premises to be sold at auction after prescribed notices. In the language of that court the stipulated remedy for non-payment of the *interest* was to be "possession of the road and receipt of the profits. No power of sale was conferred for such a cause" (12 Casey, 152). The net profits of the road have been applied in reduction of the accumulating interest, which is, for several years, in arrears. The trustees are, under a decree of this court in possession of the road, and in the receipt of its accruing income. The net annual avails do not, in amount, nearly equal the annual in-

terest. But there is no certainty that the profits may not be greatly increased hereafter, before the principal shall have become due.

The present question is, whether, until the principal shall have become due, the bondholders, or the trustees on their behalf, can obtain under the name of a foreclosure, a decree of this court for the extinction of the company's equity of redemption, either through a sale of the road and franchises, or otherwise.

In the courts of Pennsylvania there could be no foreclosure of this mortgage. In those courts, the only proceeding on a mortgage is by scire facias, under the statute of 1705, to obtain a judgment at law that the mortgaged premises be sold for the payment of the mortgage debt. There could be no proceeding under this act until after the expiration of twelve months from the time at which the principal of the bonds will fall due. The proper method of authorizing an earlier proceeding under the act would have been to insert in the mortgage a provision that whenever the interest should be, for a designated period, in arrear, the principal debt should, for the purpose of sustaining such a proceeding, be considered as having been due for a year. The practice of conveyancing in the State when a long credit is given for a mortgage debt is to insert such a provision. If not opposed to the views of the parties in this case, it would probably have been inserted in the mortgage in question.

The chief subjects of the mortgage were the railroad and franchises. These could not, without legislative authorization, have been sold under an execution, or voluntarily sold, or effectually mortgaged. Had the legislature, by the act of 1852, simply authorized the mortgage to be made as a security for the principal and interest of these bonds, the road and franchises would, according to a doctrine peculiar to Pennsylvania, have been liable to execution under a judgment at law upon a coupon for interest in arrear on any one of the bonds. A sale, under such an execution, would, according to this peculiar doctrine, have vested the road and franchises in the purchaser

absolutely. (1 J. P. Jones, 292.) But the specific purpose of the act of 1852 is defined in it so as impliedly to exclude the application of the doctrine. This law enacts that "a. sale *under and by virtue of the mortgage* so made and executed shall pass the said road property and franchises to the purchaser or purchasers," etc. Though the interest is a part of the mortgage debt, a sale under an execution upon a judgment for such interest is not, in the language of Pennsylvania lawyers, a sale *under the mortgage.* The only sale to which the 'designation seems to be applicable is either one under an execution in a proceeding upon the act of 1705, or a conveyance under a power to sell contained in the mortgage. This being so, if we keep in mind that a legislative enactment was required in order to make the road and franchises liable at all to sale under an execution, the conclusion which seems to follow is that the act of 1852 has not made them saleable otherwise than in one of these modes.

We have seen that, under a proceeding upon the act of 1705, there can be no sale of them until after the maturity of the bonds.

The act of 1852, would, as we think, have enabled the company to insert in this mortgage an effectual power to sell on default in the payment of either interest or principal. A modern English mortgage, with such a power usually contains a proviso that the insertion of the power shall not prejudice the right of the mortgagee to foreclose. (22 L. J. Ch. 247; 15 Eng. L. & Eq. 454; Cooke, ch. 6.) In such a mortgage, the sale under the power and the foreclosure are optional alternative modes by which the creditor may enforce the security. In the absence of such a proviso, unless a statute regulates the practice, the ordinary method of proceeding in chancery on a mortgage containing a power of sale must be under the equitable jurisdiction to enforce and regulate the execution of the power. But English chancellors, before, and since the late English statute, have, in proceedings upon mortgages containing the power of sale without the proviso, decreed foreclosures in the ancient mode. This

30

has been 'done where the property mortgaged has been valueless in the market as the subject of a sale, or where such foreclosure has, for any other apparent reason, been more beneficial for *all* parties concerned than a sale. A further investigation of the cases in which this may be done in England, is rendered unnecessary by the decision of the Supreme Court of the State that the mortgage in question contains no power to sell for a default in the payment of interest.

So far as the railroad and franchises are concerned the possession of them, and receipt of the profits by the mortgagees is thus, as it would seem, the only remedy upon this mortgage, unless the present application to decree a foreclosure can be sustained. On the equity side of this court, remedies are not regulated, as on its law side, by the practice in the courts of Pennsylvania.

This court may, in a proper case extinguish an equity of redemption by a foreclosure. The practice in such a case, would, under the 90th of the rules of 1842, be regulated here conformably to the practice in the English chancery at that period. The argument on behalf of the complainants has been that upon a mortgage like this, containing a power to *take possession* upon default in the payment of *either interest or principal,* and a power to *sell* only on default in the payment of the *principal,* an English chancellor would entertain a bill to foreclose for non-payment of interest. However this might be, we think that the parties to the mortgage in question have by the terms and meaning of their contract, precluded the necessity for ascertaining the particular course of English chancery practice in such a case.

The 90th rule of practice was intended for the mere administration of equitable *remedies.* They must be administered under it so as not in any manner to impair the validity of *rights.* For this, the rule itself provides. Its words make it enforceable so far only as it may reasonably be applied consistently with the local circumstances and local convenience of the district. Though, in this court, the remedy is not regulated conformably to any jurisdiction or practice

of the State courts, we may, in construing this mortgage, be able to ascertain the intention of the parties by referring to the laws of the State, because the parties must be supposed to have had these laws principally in view when the instrument was prepared. In thus approaching the interpretation of their contract, in order to ascertain their mutual rights, we may remark also that, so far as it has been interpreted already by the Supreme Court of the State, we have a guide which we may safely follow.

There was, in this case, a great reason to induce the mortgage debtors to withhold from the bondholders the right of extinguishing precipitately the equity of redemption. The road was not made, much less equipped. The company's finances were already embarrassed. Unless a sinking fund of reserved capital should be set apart for payment of the earlier coupons, their punctual payment cannot have been certain. It was perhaps, in the actual case, not even probable. The financial embarrassments of the company cannot have been unknown to the speculators who took the bonds. The bondholders may be thus called speculators because they might lawfully have taken the bonds, as they probably did, at such a discount from their nominal principal as to increase greatly the high rate of interest which was payable on their face. It might therefore have been thought that the speculation in them would be unreasonably favored if there was to be any other security on the road and franchises, before the expiration of the credit for the principal than a right of possession and receipt of the accruing profits. The question is whether enough does not appear in the case to show an intention of the parties, at the date of the mortgage, that the equity of redemption should not be extinguishable at the expiration we will say, of six months, at the option of any holder of an unpaid coupon. To ascertain this intention, we may combine all the positive and negative circumstances of the transaction in a single view of their effect. The insertion in the mortgage of the power to take possession upon default in the payment of either interest or principal, with a

power to sell only upon default in the payment of principal, and the omission of any provision to authorize the issuing of a scire facias on default in the payment of interest although the act of 1852 had specified a sale *under the mortgage* as the means of divesting the company's title, are circumstances to show that so far as the law of remedies in courts of Pennsylvania, and so far as the practice of conveyancing in the State, might be concerned, the equity of redemption was at every point guarded against liability to extinction at any period before the principal should fall due. If we recur to the probable reasons, or motives, for thus guarding it, the circumstances recapitulated show that possession of the road, with receipt of the profits, is the only remedy which, so long as it may answer the purpose of a security, however inadequate, can be enforced at an earlier period, without so violating the manifest intention of the parties as to involve an infraction of right.

If the road, in the hands of the bondholders, or their trustees, had been a mere *caput mortuum*, absolutely unproductive and useless, the court might, perhaps, for the benefit of all parties, have intervened, on the footing of necessity, to extricate, if possible, the subject of the security from utter irretrievable ruin. But no such equitable administration of the law of necessity is required in this case. There is not even a relative necessity for the exercise of such a jurisdiction. The net income of the road, has, it is true, fallen so far short of what may have been expected, that the bondholders are disappointed creditors. They have indeed been sadly disappointed. But the road is not altogether valueless, or absolutely unproductive; and they are now in possession, as we think, of the specific security for which they contracted.

On the whole therefore, we do not think that a sale or foreclosure should be decreed.

The following orders had previously been made in this case:

The report of the commissioner to whom this matter was referred, to report as to the distribution of the fund in

court, arising from the rental of the road to the Reading Railroad Company, having been filed, the following orders were yesterday entered by the court:

And now, 6th December, 1860, the court having considered the commissioner's report filed on the 5th December instant, and it appearing that the sum of $915.18 whereof no distribution, immediate or prospective, has been reported, will more than suffice to pay the demands of the respective exceptants, Abbott & Co., and O'Neill, if the same should hereafter be allowed, it is considered, adjudged and decreed that the respective amounts, together $25,998, reported as payable to the several parties named in the said report, be paid accordingly out of the fund in court on the production and surrender of the coupons by the respective holders of the same.

It is ordered that where other coupons, payable out of the fund in court, have not been as yet presented, the said commissioner, so far as may be practicable, cause actual notice of the pending reference to be given to such parties as on any former distribution have received payment of said coupons for interest on the same respective bonds, and that he report from time to time as the respective results of unfinished business of the reference to him shall have been ascertained, or as occasion may otherwise require.

It is further ordered that he report specially from time to time, as parties entitled to payment out of the fund in court may respectively produce their coupons to be surrendered on the payment of the same.

It is ordered that the several items of expenses whereof the particulars, as specified in the said report, amounting to the two sums of $1,076.84 and $80 be paid out of the fund in court.

The remaining subjects of the reference and report are reserved for future consideration, with liberty to the respective parties interested to move the court.